# IN THE COURT OF APPEALS OF IOWA

No. 19-1020
Filed October 23, 2019

IN THE INTEREST OF N.B.,
Minor Child,

M.B., Father,
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District
Associate Judge.


A father appeals the termination of his parental rights to his child.
**AFFIRMED.**


Barbara O. Hoffman, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant
Attorney General, for appellee State.

Michael Sorci of Youth Law Center, Des Moines, attorney and guardian ad
litem for minor child.


Considered by Potterfield, P.J., Greer, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MAHAN, Senior Judge.**

A father appeals the termination of his parental rights to his child, born in 2006.[1]  He challenges the sufficiency of the evidence supporting the statutory grounds for termination and contends the juvenile court should have applied the statutory exception under Iowa Code section 232.116(3)(a) (2019) to preclude termination.  We affirm.

**I.     *Background Facts and Proceedings***

This family came to the attention of the department of human services in February 2018, following the child's 911 call reporting domestic violence by the father toward the mother as the child was hiding in a closet.  The mother suffered dislocated ribs during the incident.  The father was arrested.  He denied the argument was physical; however, he subsequently pled guilty to domestic abuse assault causing bodily injury and was sentenced to probation.[2]  A no-contact order was issued prohibiting the father from having contact with the mother.  Another no-contact order was subsequently issued naming the child as a protected party.  The father has not lived in the mother's home since the incident.

The parents have a history of domestic violence, and the mother and her three children previously spent several months living in a domestic violence shelter.[3]  The father has a lengthy record of criminal convictions for violent and substance-related offenses.  Prior to the incident, the father was using methamphetamine and drinking heavily on a daily basis.  The father said he used

---

[1] The child is placed with the mother; her parental rights were not terminated.
[2] The father also pled guilty to a charge of child endangerment stemming from the incident.
[3] The father is not the biological parent of N.B.'s two older half-siblings.  Those children are not part of these proceedings.

methamphetamine "a couple months back," but he refused to cooperate with a drug screen. He was not taking his prescribed mental-health medications. In April 2018, the father was hospitalized for mental-health reasons.

The child was adjudicated to be in need of assistance. The father received an array of rehabilitative services, but he did not follow through consistently with mental-health treatment, substance-abuse treatment, or drug testing, and he tested positive for methamphetamine and used alcohol while on probation. In September 2018, he pled guilty to assault on a police officer. The father stipulated to violating his probation, his probation was revoked, and he was sentenced to prison.

The State filed a petition to terminate the father's parental rights in April 2019. The termination hearing was held in May. The record before the juvenile court indicated the child had seen the father several times since his arrest in February 2018, and he "might be released [from prison] as early as late July [2019]." The department and guardian ad litem recommended termination of the father's parental rights.

Following the termination hearing, the court entered its order terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(f). The father appeals.

## II. Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the

defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III. Discussion

The father challenges the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court. Specifically, he contends the State failed to prove the child cannot be returned to his custody, one of several elements required by Iowa Code section 232.116(1)(f). According to the father, he would "very likely" be released from prison "by October 2019" and he "had asked for a six-month extension at the permanency hearing and again at the termination hearing."

Our de novo review of the record reveals the father's lack of accountability with regard to every ground precipitating these proceedings. The child called 911 to report the father abusing the mother; the father said the child "was coached" by the mother to call 911. The father had not taken domestic violence classes because, in his words: "I've never had a domestic abuse"; "I've never assaulted [the mother]."

The father testified he "was not sound minded" when he entered his guilty pleas[4] but he was "in sound mind now." Yet the father refused to sign releases to allow the department access to information about his mental-health treatment or medications.

---

[4] When asked if he recalled writing and signing documents setting forth the factual bases for his guilty pleas to domestic abuse assault causing bodily injury ("I assaulted [the mother], and she is the mother of my child.") and child endangerment ("My child was present when I assaulted her mother . . . ."), the father testified, "No, never. No, I don't. I would never sign that. And if it is, it's a lie. . . . I didn't write that statement."

The father denied using methamphetamine during this case despite several admissions he had,[5] and he challenged his positive urinalysis test result. The father testified, "I never admitted to using methamphetamine because I wasn't using methamphetamine."

A member of the father's family testified to being in the home during an incident when the father punched a wall. The family member further acknowledged the father was "violent" when he used methamphetamine, which was a "pretty scary" situation for a child N.B.'s age. The juvenile court noted in its ruling:

> During the father's testimony, he was repeatedly inappropriate and combative. His demeanor was violent and aggressive. The Court repeatedly reminded him re: basic rules of the court room such as not cursing and to answer questions. The Court notes he exhibited this same demeanor and conduct at the permanency hearing—while [the child] was in the courtroom. The father is unable and/or unwilling to control himself.

The child indicated she did not have any interest in having contact with the father and she was concerned for her safety upon his release from prison. We conclude the evidence supports termination of the father's parental rights pursuant to Iowa Code section 232.116(1)(f).

The father contends the juvenile court should have applied the statutory exception under section 232.116(3)(a) for when a relative has legal custody of the child to preclude termination. The court found:

> There are no compelling reasons to maintain the parent-child relationship and no exceptions to termination being in the best

---

[5] When asked if he recalled admitting to using methamphetamine, the father stated:
> No. Nope, I never did, and that's another thing that's—I'm taking that—I've never dropped dirty. Never had—never had a UA to drop dirty. They said I had meth in my system. That was falsified that right there in the documents. I'm taking that back to court too because I was not using methamphetamine. I never used methamphetamine until years prior to this.

interest of the child. The Court has considered [N.B.] is in the custody of her mother, but that does not override the need for termination of the father's parental rights. [N.B.] deserves permanency and safety which can only be accomplished through terminating the father's parental rights. Based upon the father's explosive demeanor and conduct during the termination trial, the Court is concerned any type of potential contact between [N.B.] and the father would be detrimental to the child. He is either completely unwilling and/or unable to be remotely appropriate.

On our de novo review, we agree with the juvenile court that the father's lack of progress or insight into his mental-health, substance-abuse, and domestic violence issues support a conclusion that it would not be in the child's best interest to delay her placement in a stable and permanent home because her current placement is a relative.

We conclude termination is in this child's best interests, and no permissive statutory exception should be applied to preclude termination. We affirm the decision of the juvenile court to terminate the father's parental rights.

**AFFIRMED.**